TAYLOR *v.* GEORGIA STATE SAVINGS ASSOCIATION.

Opinion delivered January 12, 1920.

1.  TAXATION — SETTLEMENT OF COLLECTOR — LIEN.—Kirby's Digest, section 7172, providing for a lien on the property of a tax collector for all amounts found on settlement to be due from that officer, applies both to the original account of the officer and to the readjusted account under section 7174; both sections being embraced in the same statute.

2.  TAXATION—LIEN ON PROPERTY OF COLLECTOR—LIMITATION.—Kirby's Digest, sections 4438, 4439, regulating the period of limitation of judgment liens to three years, has no application to section 7172, providing that balances found due from a collector shall be a lien from the date of the settlement of his account, inasmuch as the former statutes have no application to liens of judgments of the county court.

3.  TAXATION—LIEN ON COLLECTOR'S PROPERTY—EXTENT.—The lien of Clay County on the property of the tax collector for balance found due from him is co-extensive with the limits of the county, regardless of which district of the county the collector lives in or in which the settlement was filed or readjusted.

4.  EXECUTION—PLACE OF SALE.—Under Kirby's Digest, section 3275, and Acts 1911, page 161, section 7, providing two judicial districts in Clay County, and directing all sales of real estate made by the sheriff under the laws regulating judicial sales to be made at the courthouse door in the Western District, all sales under execution of land lying in either district are to be made in the Western District.

5.  TAXATION—LIEN ON COLLECTOR'S LAND—SUPERSEDEAS.—A lien created by section 7172, Kirby's Digest, in favor of a county on the land of a tax collector was not extinguished by the supersedeas bond executed by the tax collector on appeal to the Supreme Court from an adjustment of his account; the bond merely suspending the enforcement during the pendency of the appeal.

6.  TAXATION—LIEN ON COLLECTOR'S LAND—ENFORCEMENT.—Where a county obtained a lien on a tax collector's land under Kirby's Digest, section 7172, and the collector appealed to the Supreme Court and executed a supersedeas bond, the county could prop-

erly enforce the county's lien against the land without first exhausting its remedy against the sureties on the bond.

7.  MARSHALING ASSETS—ENFORCEMENT.—Where a county acquired a lien against the land of a tax collector under Kirby's Digest, section 7172, and the collector's land sold under execution and purchased by a surety on the collector's supersedeas bond, a junior lien-holder can not subsequently ask that the surety be compelled to secure reimbursement for losses out of property other than that mortgaged, where the surety stands upon his legal right as purchaser at execution sale, and does not ask to be subrogated to the rights of the county.

8.  JUDGMENT—CONSTRUCTIVE NOTICE.—A judgment of the county court purporting to be rendered on a particular day was notice of its existence, though the record of the last preceding day did not show an adjournment to that day, where such adjournment was actually made and the record was subsequently corrected to speak the truth.

9.  EVIDENCE—PRESUMPTION OF REGULARITY OF COURT PROCEEDINGS.—Where a court of record, assembled at the place authorized by law, assumes to function as a court, it is presumed, until the contrary appears, that the proceedings are regular and proper; but this presumption may be overcome by other portions of the record showing that the court was not legally in session at the time of the attempted rendition of the judgment in controversy.

Appeal from Clay Chancery Court, Western District; *Archer Wheatley,* Chancellor; reversed.

*J. S. Taylor* and *Oliver & Oliver,* for appellants.

1.  Kirby's Digest, section 7172, applies to the facts of this case, which are undisputed, and appellees are not *bona fide* purchasers for valuable consideration and without notice. Appellees' contention that this statute has no application to balances found due from a collecting officer on the readjustment of his accounts but only to balances on original settlements is unfounded and erroneous. Kirby's Digest, sections 7165 to 7175, are a part of the act of March 31, 1883, pages 286-8. Sections 7163 to 7173, are part of the Revised Statutes, and in 1867 act No. 56, Acts 1867, was passed and is exactly the same as sections 7164-5 of Kirby's Digest, except it provides that the proceedings may be begun within *one* year instead of two years, as in the act of 1883. Properly sections 5280-1

should have preceded section 5279, but the fact that they are so digested in no way affects their construction. The primary object of the law was to provide a lien for the county. Courts should put themselves in the place of the Legislature at the time of the enactment and investigate the state of the law on the subject, the contemporaneous circumstances and facts and make such application as will best promote the objects of the legislation. 20 A. & E. Enc. Law, 632 (b) ; 76 Ark. 443.

Statutes relating to the same subject-matter must be considered as a whole and construed in the light of other provisions relating to the same thing. 125 Ark. 459; 122 *Id.* 111. The intention of the Legislature must be ascertained and given effect. 36 Cyc. 1106 (2) *et seq.* Construing the act of 1867 in the light of these rules, there is no doubt that the Legislature intended that a lien should attach to the real and personal property of the officer when the balance was found after the settlement had been approved. Clearly, the court did not err in holding that Clay County had a lien under section 7172, Kirby's Digest, but did err in holding the lien of appellees superior to that of the county to which appellees succeeded. The county court is a superior court of record. 53 Ark. 476; 38 *Id.* 150. Probate courts are also. 11 Ark. 551-2; 18 *Id.* 449; 44 *Id.* 270; 47 *Id.* 419.

The presumption is that the acts of courts of record are regular and proper. Black on Judg., § 270, and this presumption is indulged, even though the record is silent or incomplete. *Ib.,* § 271; Freeman on Judg., § 132; 19 Ark. 96; 23 Pac. 453; 16 Cyc. 1075 (b) ; 3 Ark. 532; 24 *Id.* 151, 143.

2. Everything is to be presumed in favor of the regularity of the proceedings of courts of record. 20 Cent. Dig. Ev., § 104; 24 Ill 210; 12 Kan. 282; 15 N. W. 562; 25 S. W. 372; 95 N. Y. S. 93.

3. Kirby's Digest, section 4478, provides that decrees conveying land or vesting title thereto shall be recorded within one year, or be void as to innocent purchasers, etc. The decree to be constructive notice must

contain the opening order of the court, and the opening and adjourning order on the last succeeding day thereafter. The contention of appellees and the holding of the court are contrary to all authorities and to reason.

Actual and constructive notice are equally binding. 2 Pom. Eq. Jur., § 690, 592, p. 17.

*Huddleston, Fuhr & Futrell, House, Rector & House* and *C. T. Bloodworth,* for appellees.

1. Section 7172 of Kirby's Digest, creating a statutory lien, has no application, but if it does, then the record of the court at Piggott, showing that there was no court on March 4, 1915, was not sufficient to charge plaintiff with constructive notice. The revenue law deals with two classes of collectors, *delinquent* and *non-delinquent* collectors. Sections 7175-6. Matthews was not a *delinquent* in any sense.

2. Even if Clay County had a lien under section 7172, the decree is correct, as plaintiff had no actual knowledge of the proceedings to restate the settlement filed by Matthews in July, 1913, and the records of the county court of Piggott did not constitute constructive notice to plaintiff. The case must be tried on the original record before this court, which shows affirmatively that there was no county court in session on March 4, 1915. On May 21, 1915, when Matthews gave the Georgia Savings Association its mortgage, the judgment of the county court showed on its face to be absolutely void. If the court had convened at any time after February 26 and prior to March 4, 1915, its acts would have been void under the law. 48 Ark. 227; 58 *Id.* 181; 89 *Id.* 160; 101 *Id.* 390-5; 203 S. W. 704; 61 A. L. R. 456; 211 S. W. 369. The record fails to show a session of court on March 4, 1915, and any session thereafter was void.

There is nothing in the record which shows a *nunc pro tunc* entry correcting the record, but if there was it was made in 1918, too late to affect appellees' rights. 99 Ark. 435; 127 *Id.* 337; Freeman on Judgm., §§ 67-8; 4 Am. St. 883, notes; 23 *Id.* 431; 69 *Id.* 764; 126 *Id.* 738;

**ARK.]**    TAYLOR *v.* GEORGIA STATE SAV. ASSN.    **429**

15 L. R. A. (N. S.) 683, notes; 18 N. W. 839; 23 Cyc. 46. Presumptions are never indulged where the record is silent. No duty rested on appellees to investigate facts of which it had no knowledge. The decree is right.

McCulloch, C. J. J. E. Matthews was sheriff and ex-officio tax collector of Clay County, and at the July term, 1913, of the county court of that county he filed his settlement of tax collections showing, among other credits, a certain payment of $8,000 to the county treasurer. The settlement was approved. A petition was filed in the county court on February 5, 1915, against Matthews by the treasurer alleging that the item of credit for said payment of $8,000 to the treasurer was erroneous, in that no such payment was in fact made and the petition contained a prayer for readjustment of said settlement account. The proceedings were based on the statute which provides that "whenever any error shall be discovered in the settlement of any county officer made with the county court, it shall be the duty of the court, at any time within two years from the date of such settlement, to reconsider and adjust the same." Kirby's Digest, section 7174.

The county court proceeded to readjust the said account of Matthews on March 5, 1915, and entered a judgment against Matthews readjusting his said account and finding him in debt to the county in the sum of said item for which he had erroneously taken credit.

These proceedings were had at the regular January term, 1915, of the county court at Piggott, the county seat, where the original settlement account had been filed and approved. Clay County has two separate court districts, the courts for the Eastern District being held at Piggott, and those for the Western District being held at Corning. Acts 1881, p. 21; Acts 1911, p. 162.

Citation against Matthews was duly issued and served, returnable on February 25, 1915, and on that day the hearing was continued over to March 4, 1915, to which date an order of adjournment of the court

was entered. The judgment readjusting the account was, as before stated, rendered and entered of record on March 5, 1915, but at that time the record failed to show an opening and adjournment of the court on March 4th, the date to which the court had previously adjourned. However, this omission was subsequently corrected by a *nunc pro tunc* entry showing that the court convened on March 4th, according to adjournment, and that, after certain proceedings were had, there was adjournment to March 5th, the date on which the judgment in controversy was rendered. This was not done, however, until after the rights asserted by appellees in this action were acquired.

Matthews mortgaged the lands now in controversy situated in the Western District of Clay County to appellees Georgia State Savings Association and American Building & Loan Association in April and May, 1915, respectively, and appellees now seek to foreclose said mortgages.

Execution was issued against Matthews on the aforesaid judgment in favor of Clay County on June 12, 1917, and the same was levied on the lands in controversy. The land was advertised and sold under the execution at Corning, and appellant Taylor, who was one of the sureties on the bond of Matthews as tax collector, purchased the lands for himself and his co-sureties. In the foreclosure suit instituted by appellees, Taylor was joined as defendant, and relief against him was sought in the cancellation of his deed under the said execution sale. The chancellor granted that relief against appellant and decreed a foreclosure of the mortgages free from any claims of appellant.

Appellant asserts the superiority of his claim as purchaser of the land upon the force of a lien created in favor of Clay County by the following statute:

"The amount or balance of every account so settled and due to the county shall be a lien from the date of the settlement of such account on the real estate and personal property of the delinquent situated in the

county wherein each delinquent lives." Kirby's Digest, section 7172.

Appellees contend that the statute has no applica- tion to balances found to be due from a collecting officer on the readjustment of his accounts, and that it applies only to delinquencies on balances on original settlements made by such officers.

Sections 7155 to 7176, inclusive, of Kirby's Digest, which relate to the settlements of collecting officers with the county court and the enforcement of the claims of counties against delinquent officers, were enacted in the order they now appear in the Digest by the act of March 31, 1883, which was a general revenue statute. Acts 1883, p. 199. The last two sections mentioned relate to readjustment of accounts for errors within two years after date of settlements.

Learned counsel for appellees disclaim any contention that the position of section 7172 of the digest with relation to the later sections (7174 and 7175) authorizing the readjustment of accounts has, of itself, an important bearing on the interpretation of this part of the statute, but their argument is, as we understand it, that, under the law as declared in previous statutes prior to the passage of the revenue act of 1883, *supra,* section 7172 did not apply to balances due on readjusted accounts under the other sections, and that when the framers of the act of 1883 re-enacted those parts of the old statutes in the regular order in which they appeared in Gantt's Digest, it was meant to adopt the same entirely with the restricted application of each section. This does not follow, even if it be conceded that section 7172 as found in the old statute did not apply to balances due on readjustment accounts. The sections on this subject in Kirby's Digest down to and including section 7173 were in the Revised Statutes of 1838, and in the year 1867 the General Assembly enacted the statute (Kirby's Digest, secs. 7174 and 7175) authorizing the county court to readjust the accounts of such officers within one year from date of settlement. All of these

sections of the old statute, as digested in Gantt's Digest of 1874, were incorporated in regular order and substantially in the same language, except that section 7174 was changed so as to authorize the readjustment within two years, instead of one year, as theretofore authorized.

There is little reason for assuming that the lawmakers meant to make a distinction between balances due between original settlement accounts of collecting officers and those accounts which the county court might readjust upon authority of the statute. This distinction might have resulted under the old statutes by reason of the fact that the various provisions of the law were in different statutes, separately enacted, without reference to each other, but when the framers of the general revenue and taxation law of 1883 gathered together the various sections of the former statutes and enacted them into a composite whole, their separate relationship to each other was changed and the distinctions which thus existed with respect to the effect of the lien section (7172) on the other sections authorizing readjustment of accounts entirely disappeared.

What the framers of the statute meant to do was to give the county a lien on the property of a collecting officer for all amounts found on settlement to be due from that officer, whether the balance appeared from an original account of the officer or from a readjusted account. The lien is conferred for the balance due whenever ascertained and declared by judgment of the county court. The balance found due is the same debt, though unascertained until the account is readjusted, and the lien attaches under the statute whenever the balance is ascertained and declared.

There is no significance in the use of the words "account so settled" in section 7172 as showing that the provisions of that section applied only to balances found due under sections of the statute which precede this one in order. The sections are all embraced in a single statute, and the words "so settled" relate to balances found

due on settlements and readjustments thereof as author-
ized by that statute.

Our conclusion, therefore, is that the statute in ques-
tion applied to the balance found due on the readjust-
ment of the accounts of Matthews.

It is next contended that the lien expired in three
years under a general statute of the State regulating
the period of limitations of judgment liens, which pre-
scribed that such liens shall continue in force three years
from date of judgment. Kirby's Digest, secs. 4438, 4439.

We do not quite understand the application of this
contention to the facts of the present case for the reason
that the execution was issued and sale made thereunder
within three years after the rendition of the judgment
of the county court readjusting the account of Mat-
thews. Be that as it may, however, it is clear that the
period of limitation fixed by the general statute has no
application to the statute now under consideration with
respect to liens in favor of a county against delinquent
collecting officers. The general statute applies only to
judgments "in the supreme, chancery or circuit courts
of this State, or in district or circuit court of the United
States within this State." Kirby's Digest, section 4438.
The lien involved in the present case is one conferred in
favor of the county under the special circumstances men-
tioned in the statute, that is to say against the property
of a delinquent officer for the balance found due to the
county on his settlement for funds collected. There are
no prescribed limitations upon the continuation of this
lien. Whether the general statutes of limitation of ten
years for suits on judgments apply, we need not decide
in this case.

The next contention is that, inasmuch as Clay County
has been divided into two districts, the effect of which
is to make the separate districts the same as distinct
counties, the lien under this statute only applies to prop-
erty within the Eastern District, where the judgment
of the county court readjusting the account of Matthews
was rendered. That is not the language or the effect of

the statute, which in express words declares the lien in favor of the county "on the real estate and personal property of the delinquent situated in the county." The lien is, therefore, co-extensive with the limits of the whole county, regardless of which district the delinquent lives in or in which the settlement was filed or readjusted.

Again, it is insisted that the execution sale was void because it was held at the courthouse door at Corning, in the Western District, whereas it should have been held at the courthouse door at Piggott, the county seat. The lands sold are, as before stated, situated in the Western District. The statute regulating sales of real estate under execution provides that the sale of real estate "shall be made at the courthouse door, unless at the request of the defendant who owns the land, the officer shall appoint the sale upon the premises." Kirby's Digest, section 3275. This means, of course, the courthouse door of the county where the lands are situated. In the statute dividing Clay County into two districts there is a section relating to the enforcement of judgments and decrees (section 7) which reads as follows:

"That all judgments and decrees rendered in the circuit courts of the respective districts shall be liens upon real estate only in the district where such judgments and decrees are rendered; but executions in the hands of the sheriff shall have the same lien and force throughout the entire county, as though but one court was held in said county; and all sales of real estate and other property made by the sheriff, in accordance with the laws of this State, regulating judicial sales at the courthouse door in the Western District, shall be as lawful as if made at the courthouse door of the county seat. Provided, that all sales upon executions, decrees and orders of the courts of the Eastern District shall be made at the courthouse door of the county seat in the Eastern District."

It must be confessed that the language of this section is to some extent vague and uncertain, but we think

the proper interpretation of the language is that all public sales of lands situated in the Western District of Clay County are to be made at the courthouse door in that district. The proviso in the section is the part which renders it uncertain, but it was intended, we think, to declare that all sales on execution, that is all such sales as regulated by general statute with respect to the place of sale, should be at the courthouse door in the Eastern District, and that all sales under decrees and judgments of the courts of the Eastern District should be made at the courthouse door in that district. This interpretation gives full effect to the manifest purpose of the lawmakers to treat the Western District of Clay County as a separate county so far as concerned the regulation of sales under execution. The use of the words "judicial sales" was obviously intended to embrace execution sales, though it is not a correct use of the term.

It is further contended that the lien created by statute in favor of Clay County was extinguished by the supersedeas bond executed by Matthews on his appeal to the Supreme Court. The law has been settled against this contention by the decision of this court in the case of *Love* v. *Cahn*, 93 Ark. 215, where it was held that the execution of a supersedeas bond does not operate as annulling or vacating the judgment appealed from, but merely suspends the enforcement during the time that the appeal was pending. Nor is it correct to say that the county or the sureties on the bond of Matthews ought to have first exhausted the remedy against the sureties on the supersedeas bond.

This is also true as to the contention that all of the property of Matthews should be marshaled and that appellant and the other sureties on the bond of Matthews should be compelled to secure reimbursement for losses out of property other than that mortgaged to appellees. That question might properly have arisen if appellees had sought to compel marshaling of assets before the sale under execution and the acquisition of the rights

of appellant as purchaser of the particular lands sold at the execution sale. Appellant, though originally liable to Clay County for the amount, has acquired specific rights under his purchase at the execution sale, as evidenced by the sheriff's deed pursuant to the sale, and it is too late now for appellees to ask a court of equity to compel him to release the rights thus acquired and seek reimbursement out of other property of the delinquent collector. He is not asking to be subrogated to the rights of the county, as a judgment creditor of Matthews, but he stands upon his legal right as purchaser at the execution sale. Appellees are now in no position to insist upon that relief, which a court of equity, under other circumstances, might have afforded.

This brings us to a consideration of the last contention of counsel for appellees in support of the correctness of the decree, and the one upon which it seems the chancellor based the decree, that is to say the contention that the judgment of the county court entered on March 5, 1915, readjusting the account of Matthews was void on its face at the time appellees acquired rights in the property in controversy under the mortgages for the reason that the record showed an adjournment from February 25, 1915, to March 4, 1915, without showing that the court convened on the last named date and adjourned over to the 5th.

The record of the county court, which was before the chancellor at the time of his decree, including the *nunc pro tunc* entry showing that the county court was in fact convened on March 4th, and adjourned over until the next day, made a complete record of a valid session of the county court on March 5th, the date of the rendition of this judgment. But it is conceded that appellees at the time of the execution of the mortgages had no actual notice of the rendition of this judgment, but the contention is that the condition of the record at that time was defective in failing to show a session of the court on March 4th, to which it had been adjourned, that the judgment entry of March 5th did not constitute con-

structive notice to appellees in dealing with Matthews concerning the property on which the county asserted a lien. The contention is, in other words, that, since appellees had no actual notice of the rendition of the judgment, the record as it then stood did not give constructive notice because it was a record which appeared on its face to show that the judgment was unauthorized. If the *nunc pro tunc* order correcting the defects in the record was not before us, the decision of the case might be different, but we have a record now which shows that the judgment was valid, and this narrows the question for decision to that of whether or not those dealing with Matthews were bound to take constructive notice of a judgment appearing on the record of the county court, even though there was a defect in the chain of records from day to day so as to show an authorized session on the date of the rendition of the judgment.

The judgment entered on March 5th was regular so far as it showed that the court purported to be in session that day and was attempting to exercise the functions of a court. This, we think, was sufficient to put every person on notice, constructively or otherwise, that the court was then in session. The fact that, according to the record of the proceedings that day, the court was assuming to function as a court was sufficient to put the public upon notice that the court was in fact in session. If it turned out that there was no validity to the session, of course, the judgment of the court would be void, but the judgment, if in fact valid, though defective according to the omissions in the record of sessions of previous days, was sufficient to charge the public with notice of its legal existence. Where a court of record, assembled at the place authorized by law, assumes to function as a court, it is presumed until the contrary appears that the proceedings are regular and proper. *Sweeptzer v. Gaines,* 19 Ark. 96; 1 Black on Judgments, section 270; 1 Freeman on Judgments, section 132.

This presumption may be overcome by other portions of the record showing that the court was not legally

· in session at the time of the attempted rendition of the judgment in controversy, but the fact that it appeared regularly upon the record of the court was sufficient to constitute notice to all persons that there was a judgment legally rendered by the court, and if it turns out by a correction of the record, or otherwise, that the judgment was in fact valid, all persons are bound by it.

We are of the opinion, therefore, that the chancellor erred in holding that appellees were innocent mortgagees, and that the rights under those mortgages are superior to appellant's rights as purchaser of the land under execution. The decree is reversed and the cause remanded with directions to enter decree in favor of appellant in accordance with this opinion.